**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**MIDDLE DIVISION**

| | | |
|---|---|---|
| **SUSAN SWANN, individually** | ) | |
| **and on behalf of all others** | ) | |
| **similarly situated,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No.:** |
| **v.** | ) | **4:18-CV-1000-VEH** |
| | ) | |
| **DYNAMIC RECOVERY** | ) | |
| **SOLUTIONS, LLC, et al,** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

## I.    INTRODUCTION

The Plaintiff, Susan Swann, on behalf of herself and a purported class of similarly situated individuals, claims that Defendants Dynamic Recovery Services, LLC ("DRS") and Jefferson Capital Systems, LLC ("JCS") violated the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692p (the "FDCPA"), when DRS sent her a letter attempting to collect on a debt owed to JCS. (Doc. 1). The case comes before the Court on the Motion to Dismiss, filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, by DRS and JCS, for failure to state a claim upon which relief may be granted. (Doc. 16). For the reasons stated herein, the motion will be **GRANTED** and this case will be **DISMISSED with prejudice**.

## II.    STANDARD

A Rule 12(b)(6) motion attacks the legal sufficiency of the complaint. *See* FED. R. CIV. P. 12(b)(6) ("[A] party may assert the following defenses by motion: (6) failure to state a claim upon which relief can be granted[.]"). The Federal Rules of Civil Procedure require only that the complaint provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 103, 2 L. Ed. 2d 80 (1957) (footnote omitted) (quoting FED. R. CIV. P. 8(a)(2)), *abrogated by Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007); *see also* FED. R. CIV. P. 8(a) (setting forth general pleading requirements for a complaint including providing "a short and plain statement of the claim showing that the pleader is entitled to relief").

While a plaintiff must provide the grounds of his entitlement to relief, Rule 8 does not mandate the inclusion of "detailed factual allegations" within a complaint. *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964 (quoting *Conley*, 355 U.S. at 47, 78 S. Ct. at 103). However, at the same time, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the

allegations in the complaint." *Twombly*, 550 U.S. at 563, 127 S. Ct. at 1969.

"[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine <u>whether they plausibly give rise to an entitlement to relief</u>." *Id.* (emphasis added). "Under *Twombly*'s construction of Rule 8 . . . [a plaintiff's] complaint [must] 'nudge[] [any] claims' . . . 'across the line from conceivable to plausible.' *Ibid*." *Iqbal*, 556 U.S. at 680, 129 S. Ct. at 1950-51.

A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965).

## III.  ALLEGATIONS IN THE COMPLAINT

Accordingly to Swann's Complaint, "[m]ore than 6 years ago, [] Swann fell behind on paying her bills, including a debt she allegedly owed for a Verizon

Wireless account." (Doc. 1 at 3, ¶8). At some later time, JCS purchased the debt.

Then, on September 5, 2017, DRS, in an attempt to collect the debt on behalf of JCS,

sent a letter to Swann which read, in pertinent part:

> We have been asked to contact you by our client, Jefferson Capital Systems, LLC, regarding your past due account with them. Our Client has not received payment as of the date of this letter. Therefore, the account has been placed with our office for collection.

> [1.] You may resolve your account for $132.89 if payment is received before October 20, 2017. We are not obligated to renew this offer. Upon receipt and clearance of your payment, this account will be considered satisfied and closed, and a satisfaction letter will be issued or;

> [2.] You may resolve your account for $147.65 in 2 payments starting on October 20, 2017. To comply with this offer, payments should be no more than 30 days apart. We are not obligated to renew this offer. Upon receipt and clearance of these two payments of $73.83, this account will be considered satisfied and closed, and a satisfaction letter will be issued or;

> [3.] You may resolve your account for $162.42 in 4 payments starting on October 20, 2017. To comply with this offer, payments should be no more than 30 days apart. We are not obligated to renew this offer. Upon receipt and clearance of these four payments of $40.60, this account will be considered satisfied and closed, and a satisfaction letter will be issued or;

> [4.] If you are unable to accept the above offer(s), please contact our office. We take pride in working with all consumers, regardless of your current financial position.

(Doc. 1-2 at 1). The letter also contained at "disclaimer" which stated:

The law limits how long you can be sued on a debt. Because of the age of your debt Jefferson Capital Systems, LLC will not sue you for it. If you do not pay the debt, Jefferson Capital Systems, LLC may report or continue to report it to the credit reporting agencies as unpaid. If you make a partial payment on this account it may restart the statute of limitations on this account.

(Doc. 1-2 at 1).[1]

At the time this letter was sent to Swann, the statute of limitations for any civil action to collect the debt had passed.

## IV.    ANALYSIS

### A.    An Overview of the Fair Debt Collection Practices Act

In 1977, Congress found that there was "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors" and that the "[e]xisting laws . . . [were] inadequate to protect consumers." 15 U.S.C. § 1692(a), (b); *see also* 104 AM. JUR. PROOF OF FACTS 3D *Proof Under the Fair Debt Collection Practices Act* §1. To respond, Congress passed the Fair Debt Collection Practices Act "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action

---

[1] The letter is attached to the Complaint. (Doc. 1-2). "[D]ocuments attached to a complaint or incorporated in the complaint by reference can generally be considered by a federal court in ruling on a motion to dismiss under Rule 12(b)(6)." *Saunders v. Duke*, 766 F.3d 1262, 1270 (11th Cir. 2014).

5

to protect consumers against debt collection abuses." 15 U.S.C. §1692(e).

"To assert a claim under the FDCPA, a plaintiff must establish the following elements: '(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA.'" *Buckentin v. Sun Trust Mortg. Corp.*, 928 F. Supp. 2d 1273, 1294 (N.D. Ala. 2013) (Proctor, J.) (citing sources).

The FDCPA prohibits certain conduct. "Section 1692e of the FDCPA provides that '[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.'" *Crawford v. LVNV Funding, LLC*, 758 F.3d 1254, 1258 (11th Cir. 2014) (quoting 15 U.S.C. § 1692e). The statute goes on to give examples of specific conduct that violates the act. *See* 15 U.S.C. § 1692e (1)-(16). "Section 1692f states that '[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.'" *Crawford*, 758 F.3d at 1258 (quoting 15 U.S.C. § 1692f). Similarly, this section also gives specific examples of conduct violating the law. *See* 15 U.S.C. § 1692f(1)-(8).[2] "To enforce the

---

[2] It is crucial for the reader to understand that Swann brought her action under §1692e and §1692f. (Doc. 1 at 4-6). The plain text of §1692e is very broad and makes clear that the examples of violations under that section are not meant to "limit[ ] the general application" that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." *See* 15. U.S.C. §1692e. While Swann also mentions §1692e(2)(A) and §1692e(5) in her Complaint, mentioning those specific provisions does not

FDCPA's prohibitions, Congress equipped consumer debtors with a private right of action, rendering 'debt collectors who violate the Act liable for actual damages, statutory damages up to $1,000, and reasonable attorney's fees and costs.'" *Crawford*, 758 F.3d at 1258 (citing sources).

To understand actions under the FDCPA requires knowing the "least sophisticated consumer." *See LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1193 (11th Cir. 2010). This is because "[t]he inquiry is not whether the particular plaintiff-consumer was deceived or misled; instead, the question is 'whether the 'least sophisticated consumer' would have been deceived' by the debt collector's conduct." *Crawford*, 758 F.3d at 1258. "The 'least-sophisticated consumer' standard is consistent with basic consumer-protection principles." *LeBlanc*, 601 F.3d at 1194 (citing sources). "'The least sophisticated consumer' can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *Id.* (quoting another source) (internal quotation marks omitted). "However, the test has an objective component in that '[w]hile protecting naive consumers, the standard also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of

---

detract from the overall prohibition mentioned in §1692e. (*See* Doc. 1 at 5). Accordingly, this Court would err if it focused on only one provision while ignoring the rest of the section. §1692f has a similar construction to §1692e. 15 U.S.C. §1692f.

reasonableness.'" *Id.* (quoting another source).

"Generally, 'whether the 'least sophisticated consumer' would construe [the conduct] as deceptive is a question for the jury.'" *Miljkovic v. Shafritz & Dinkin, P.A.*, 791 F.3d 1291, 1307 n.11 (11th Cir. 2015) (quoting *Jeter v. Credit Bureau*, 760 F.2d 1168, 1178 (11th Cir. 1985)); *see also Buchanan v. Northland Group, Inc.*, 776 F.3d 393, 397 (6th Cir. 2015) (noting that in most cases "whether a letter is misleading raises a question of fact"). "Courts do not lightly reject fact-based claims at the pleading stage." *Buchanan*, 776 F.3d at 397. "[This Court] may do so only after drawing all reasonable inferences from the allegations in the complaint in the plaintiff's favor and only after concluding that, even then, the complaint still fails to allege a plausible theory of relief." *Id.* (citing FED.R.CIV.P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009)).

## B.    The Liability of JCS

As noted above, each of the Defendants can be liable for a violation of the FDCPA only if they are "debt collectors" as defined by the FDCPA. *Buckentin*, 928 F. Supp. 2d at 1294. The Complaint affirmatively alleges that JCS "was acting as a debt collector." (Doc. 1 at 1, ¶5). The statute defines the term "debt collector" as "any person . . . who regularly collects . . . debts . . . owed or due another." 15 U.S.C.A. § 1692a(6).  Fairly recently, a unanimous Supreme Court held that a

purchaser of a defaulted debt, like JCS, who tries to collect it for itself, is not a debt collector under the Act. *See*, *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1721, 198 L. Ed. 2d 177 (2017) ("[T]he Act defines debt collectors to include those who regularly seek to collect debts 'owed ... another.' And by its plain terms this language seems to focus our attention on third party collection agents working for a debt owner—not on a debt owner seeking to collect debts for itself. Neither does this language appear to suggest that we should care how a debt owner came to be a debt owner—whether the owner originated the debt or came by it only through a later purchase."). However, this issue was not raised by the parties, and the Supreme Court's opinion in *Henson* did not address "related" ways in which JCS might still qualify as a debt collector under the Act.[3] Accordingly, and in light of the fact that the Complaint alleges that JCS "was acting as a debt collector" (doc. 1 at 1, ¶5), the Court will not hold, at this time, that JCS is not a debt collector.

That being said, Swann's allegations all stem from a letter sent by <u>DRS</u>. Other than conclusory statements regarding the "defendants" unlawful conduct, the Complaint contains no facts which plausibly establish that <u>JCS</u> did anything wrong.

---

[3] In *Henson*, the Supreme Court noted "two related questions we do not attempt to answer today, including whether an entity "can qualify as a debt collector not only because it regularly seeks to collect for its own account debts that it has purchased, but also because it regularly acts as a third party collection agent for debts owed to others," and "another statutory definition of the term 'debt collector'—one that encompasses those engaged 'in any business the principal purpose of which is the collection of any debts.' § 1692a(6)." *Henson*, 137 S. Ct. at 1721.

Again, however, this point was not raised by the parties. Accordingly, if the Court were to dismiss JCS on this basis, it would be doing so *sua sponte.* "A district court abuses its discretion when it dismisses an action *sua sponte* without 'provid[ing] the plaintiff with notice of its intent to dismiss or an opportunity to respond,' unless amendment 'would be futile' or 'the complaint is patently frivolous.'" *Brinson v. Welsh*, 709 F. App'x 582, 584 (11th Cir. 2017) (quoting *Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1335 (11th Cir. 2011) and *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1248 (11th Cir. 2015)). In light of this standard, the Court will not dismiss JCS on these grounds, at this time.

### C. The Liability for the Representations in the Letter from DRS

In both counts of her Complaint Swann alleges that

> [a]lthough Defendants attempted to provide a <u>disclaimer</u> that the debt was time-barred, that <u>disclaimer</u> was ineffective because: a) they failed to foreclose the possibility that DRS would/could not sue on the debt; b) they failed to foreclose that [JCS] could not legally sue, rather than that [JCS] had simply chosen not to do so; c) they falsely claimed that payment would result in benefits."

(Doc. 1 at 5, ¶18; doc. 1 at 6, ¶23) (emphasis added). In the next paragraph of each count, Swann states that "[t]hese" are "materially false or misleading statements" (Count One) and "materially unfair or unconscionable means" (Count Two) which "would lead any consumer to believe that they had to pay this debt to avoid being

sued, credit reported or having to pay the full amount at some point in the future[.]" (Doc. 1 at 5, ¶19; doc. 1 at 6, ¶24) (emphasis added). For these reasons, Swann contends that the letter violated sections 1692e (Count One) and 1692f (Count Two) of the FDCPA. The Court will address each part of the Plaintiff's claims in turn.

1. ***Both Counts of the Complaint Are Due To Be Dismissed to the Extent They Are Based on the Threat of Negative Credit Reporting***

The Court agrees that the letter in question clearly states that if Swann does not make the payments requested, JCS "may report or continue to report" negative information about her to credit reporting agencies. (Doc. 1-2 at 1). However, no facts are alleged in the Complaint which plausibly establish that that statement was "false of misleading" or "unfair or unconscionable." Furthermore, Swann does not argue in her <u>brief</u> how this language violates the FDCPA. *See*, *Hamilton v. Midland Credit Mgmt., Inc.*, No. 16CV2273-WQH-NLS, 2017 WL 3705814, at *4 (S.D. Cal. Aug. 28, 2017) (Hayes, J.) (identical language was not a violation where is was "factually correct"); *Olsen v. Cavalry Portfolio Servs., LLC*, No. 8:15-CV-2520-T-23AAS, 2016 WL 4248009, at *2 (M.D. Fla. Aug. 11, 2016) (Merryday, J.), *appeal dismissed*, No. 16-16680-BB, 2017 WL 5127323 (11th Cir. Apr. 12, 2017) (no FDCPA violation where plaintiff failed to allege how the statement that the defendant "will continue to report" renders the collection letters false or deceptive). Counts One and Two will

be dismissed to the extent that they allege a violation of the FDCPA based on a threat of reporting the debt as unpaid.

## 2. Count One Is Due To Be Dismissed to the Extent It Is Based on the Threat of Being Sued

### a. The Complaint Contains No Facts or Allegations Setting Out Which Portion of the Letter Threatens Litigation

Swann's claim arises in part out of the fact that the statute of limitations has run on the debt. This Court recently confirmed that "a debt collector can attempt to get a debtor to pay a debt that is time-barred." *McCamey v. Capital Mgmt., Servs., LP*, No. 5:17-CV-1429-UJH-VEH, 2018 WL 3819828, at *5 (N.D. Ala. Aug. 10, 2018) (Hopkins, J.) (and cases cited therein). "Of course, this effort must be consistent with the FDCPA." *McCamey*, 2018 WL 3819828, at *5. It is clear that a debt collector's threatening to sue on a time-barred debt violates §§ 1692e and 1692f. *Crawford v. LVNV Funding*, LLC, 758 F.3d 1254, 1259 (11th Cir. 2014). Of course, the letter in question does not explicitly threaten litigation. It may still violate the FDCPA, however, if it is otherwise prohibited by the Act. *McCamey*, 2018 WL 3819828, at *7 ("The Court holds that a letter attempting to collect a time-barred debt can violate the FDCPA, even if it does not expressly threaten litigation, if it is otherwise prohibited by the FDCPA.").

Swann's claim focuses on the disclaimer, which expressly states that she will not be sued, by saying that it is "ineffective." The Plaintiff misses the point. There is no rule that disclaimer is required in a letter attempting to collect on a time-barred debt. *See, McCamey*, 2018 WL 3819828, at *8. Disclaimers are included to offset other language in the letter which may, at least impliedly, threaten litigation. The Plaintiff has put the proverbial "cart before the horse" by assuming, without asserting facts, or even an allegation, that the letter threatens litigation.[4] Without that allegation, the Plaintiff's claims are due to be dismissed to the extent that they are based on the improper threat of suit.

### b. The Plaintiff May Not Amend Her Complaint By Alleging Offending Portions of the Letter in Her Brief in Opposition to the Motion To Dismiss

In several places, the letter states that Swann "may resolve [her] account" and states that "[u]pon receipt and clearance of [the total payment][5], this account will be considered satisfied and closed, and a satisfaction letter will be issued[.]" (Doc. 1-2 at 1). The Plaintiff argues <u>in her brief</u> that the least sophisticated consumer would

---

[4] The Defendants <u>do</u> move to dismiss on this point, writing: "[The] Plaintiff fails to identify any language that constitutes a misrepresentation or a threat to take action that cannot be taken or that is not intended to be taken. . . . Despite generally claiming Defendants' actions were unfair or unconscionable, [the] Plaintiff fails to identify any specific actions that can reasonably be considered unfair or unconscionable." (Doc. 16 at 7-8).

[5] As noted previously, DRS offered Swann the option of making one payment of $132.89, paying a total of 147.65 in 2 payments, or paying a total of $162.42 in 4 payments.

understand the use of the "resolve" and "satisfaction" terminology to be a threat of litigation. However, these allegations appear nowhere in the Complaint[6], and Swann cannot amend her Complaint through a brief in opposition to the Motion To Dismiss. *Huls v. Llabona*, 437 F. App'x 830, 832 n. 5 (11th Cir. 2011) (*citing Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir.2004)).

      **c.**    **The "Resolve" and "Satisfaction" Language in the Letter Would Not Lead the Least Sophisticated Consumer To Believe that She Would Be Sued If She Did Not Pay the Debt**

Assuming the Complaint had alleged that the resolve and satisfaction language was problematic, the Plaintiff's claims based on that language would still fail.

      **(1)**    **The "Resolve" Language in the Letter Does Not Violate the FDCPA**

Swann first argues that the word "resolve" would lead the least sophisticated consumer to believe that she might be sued if she did not pay the debt. (Doc. 21 at 10-

---

[6] The Complaint does not quote or mention the word "resolve" at all. The Complaint does say:

> DRS [sent] Ms. Swann an initial form collection letter, dated September 5, 2017, demanding payment of the Verizon Wireless debt, via various limited-time settlement offers, the satisfaction of which would result in the account being "considered satisfied and closed" and would result in the issuance of a "satisfaction letter".

(Doc. 1 at 3, ¶8) (emphasis added). However, nowhere in the Complaint does the Plaintiff state that this language explicitly or implicitly threatened litigation. Rather, this "satisfaction" language is the basis of her claim that DRS was promoting a non-existent "benefit" to payment. (Doc. 1 at 4, ¶11).

12). The Plaintiff correctly argues[7], and this Court has noted, that generally whether the least sophisticated consumer would construe the letter as deceptive is a jury question. *Miljkovic*, 791 F.3d at 1307 n.11. However, dismissal is appropriate if "after drawing all reasonable inferences from the allegations in the complaint in the plaintiff's favor" this Court concludes that "even then, the complaint still fails to allege a plausible theory of relief." *Buchanan*, 776 F.3d at 397.

"[A] collection notice is deceptive when it can be reasonably read to have two or more different meanings, one of which is inaccurate." *Russell v. Equifax A.R.S.*, 74 F.3d 30, 35 (2d Cir. 1996). "To truly pass muster under § 1692e, a debt collector's statement must not only be true, it must also avoid ambiguity[.]" *Ponce v. BCA Fin. Serv., Inc.*, No. 10-CV-20337, 2011 WL 13175624, at *11 (S.D. Fla. May 25, 2011) (Gold, J.) (quoting *Russell*, 74 F.3d at 35) , *amended sub nom. Ponce v. BCA Fin. Servs., Inc.*, No. 10-CV-20337, 2011 WL 13175534 (S.D. Fla. July 18, 2011), *aff'd*, 467 F. App'x 806 (11th Cir. 2012), *and aff'd*, 467 F. App'x 806 (11th Cir. 2012). Thus, as noted by the Plaintiff, the question before the Court is whether there are two reasonable readings of the word "resolve" in this case, one of which is untrue, thus creating a question of fact. *McCamey,* 2018 WL 3819828, at *7.

In their arguments, the parties refer extensively to this Court's recent opinion

---

[7] *See* doc. 21 at 3, 7-8, 14, 20.

in *McCamey*, 2018 WL 3819828. In that case, this Court dealt with this same issue where the letter in question used the word "settlement" as opposed to "resolve" writing:

This Court has often advised litigants that their word choice matters because every word has meaning, connotations, and implications. Here, the primary focus is on the use of the word "settlement." (*See* Doc. 1-1 at 1, 2). The February 12, 2017, letter uses the word "settlement." (*See id.* at 1). Similarly, the May 6, 2017, letter describes a "SETTLEMENT OFFER" and uses the word "settlement" throughout the letter. (*See id.* at 2) ("[CMS] is willing to accept less than the full balance due as a settlement."); (*id.*) ("You may send the settlement payment to [CMS].").

Judge Sutton capably explained why this term could be misleading in the *Buchanan* decision:

[A] "settlement offer" with respect to a time-barred debt may falsely imply that payment could be compelled through litigation. Formal and informal dictionaries alike contain a definition of "settle" that refers to concluding a lawsuit. On the formal side, one defines the verb as "to conclude (a lawsuit) by agreement between the parties usu[ally] out of court." Webster's Third New International Dictionary 2079 (2002). Another defines it as "[t]o decide (a case) by arrangement between the contesting parties." OED Online, Oxford University Press (September 2014), http://goo.gl/yd1KF6. A third defines "settlement" as "[t]he resolution of a lawsuit or dispute by settling." The American Heritage Dictionary of the English Language (5th ed.2014), available at http://goo.gl/dPSCMH. On the informal side, Wiktionary defines "settlement agreement" as "[a] contractual agreement between parties to actual or potential litigation by which each party agrees to a resolution of the underlying dispute." *See*

http://goo.gl/00xE9s.[ ]And[ ]Dictionary.com defines "settle" as "to terminate (legal proceedings) by mutual consent of the parties." See http://goo.gl/vOmoty. Perhaps the best definition, one that accounts for the various ways an everyman individual might read the terms, appears oddly enough in Black's Law Dictionary. It acknowledges that the word is one of "equivocal meaning," "meaning different things in different connections, and the particular sense in which it is used may be explained by the context or surrounding circumstances." Black's Law Dictionary 1372 (6th ed.1990). All of these definitions make it plausible to allege that a "settlement offer" falsely implies that the underlying debt is enforceable in court.

*Buchanan*, 776 F.3d at 399. The aforementioned passage is particularly persuasive, and the Court adopts that reasoning here. The Seventh Circuit has noted similar implications from "settlement" terminology:

> If a consumer received an "offer for settlement" and searched on Google to see what is meant by "settlement," she might find the Wikipedia entry for "settlement offer." Settlement offer, Wikipedia, (Mar. 10, 2014 at 4:06 pm), http://en.wikipedia.org/wiki/Settlement_offer. There she would learn that the term "offer to settle" is "used in a civil lawsuit to describe a communication from one party to the other suggesting a settlement—an agreement to end the lawsuit before a judgment is rendered."

[*McMahon v. LVNV Funding, LLC*, 744 F.3d 1010, 1021 (7th Cir. 2014)]. The least sophisticated consumer does not have a law degree. It is objectively reasonable for such a consumer, upon receiving a letter with "settlement offer" to start wondering about legal exposure.

The Court is not saying that anytime a debt collection letter uses the word "settlement" that it is misleading a debtor, or otherwise violating the FDCPA. *See* [*Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 429–30 (3d Cir. 2018)]. Far from it. In fact, one definition of

"settlement" is: "payment or adjustment of an account." Merriam Webster's Collegiate Dictionary 1069 (2000); *see also Tatis*, 882 F.3d at 429-30 (discussing the different meanings of "settle").

Defendants urge the Court to follow the lead of the Third and Eighth Circuits. (See Doc. 32 at 9-11) (citing [*Freyermuth v. Credit Bureau Servs., Inc.*, 248 F.3d 767 (8th Cir. 2001); *Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28 (3d Cir. 2011)]). In *Freyermuth*, the Eighth Circuit "[held] that, in the absence of a threat of litigation or actual litigation, no violation of the FDCPA has occurred when a debt collector attempts to collect on a potentially time-barred debt that is otherwise valid." *Freyermuth*, 248 F.3d at 771. However, the holding from *Freyermuth* is linked to the theories actually litigated by the parties. By way of example, under § 1692e there are about sixteen ways in which the FDCPA can be violated. *See* 15 U.S.C. § 1692e. For example, even if a debt collector did not threaten litigation on a time-barred claim, this Court assumes that it could still be liable for "[t]he false representation or implication that any individual is an attorney." *See* 15 U.S.C. § 1692e(3). The *Freyermuth* holding should not be stretched too far.

Defendants also point to the Third Circuit in *Huertas*. . .. However, seven years later, the Third Circuit revisited and further explained *Huertas* in *Tatis. See Tatis*, 882 F.3d at 427-28 (explaining what *Huertas* meant). *Tatis* recognized the limitations of the *Huertas* decision. *See id.* at 428 ("Thus, *Huertas* stands for the proposition that debt collectors do not violate 15 U.S.C. § 1692e(2)(A) when they seek voluntary repayment of stale debts, so long as they do not threaten or take legal action. But the FDCPA sweeps far more broadly than the specific provision found in § 1692e(2)(A). It prohibits 'any false, deceptive, or misleading representation' associated with debt-collection practices. 15 U.S.C. § 1692e (emphasis added).") (emphasis by underlining added). *Tatis* went on to say that "construing the Act to require a threat of legal action for any FDCPA violation interposes a mandate that is not found in its text." *See id.* at 429 (citing *McMahon*, 744 F.3d at 1020-21). Accordingly, *Tatis* speaks more clearly to the question before the Court.

    . . . The least sophisticated consumer could see the settlement terminology throughout the letter and be under the impression that his debt was legally enforceable. This reasonable impression could make the least sophisticated consumer more likely to pay money on a debt that was legally unenforceable.

*McCamey*, 2018 WL 3819828, at *5–7.

Relying on *McCamey*, Swann calls the word "resolve" "settlement language," and states that "[l]ike 'settle,' the word "resolve can be misleading, pointing to definitions of the word "resolve" to mean to "'settle or find a solution to (a problem, dispute, or contentious matter).'" (Doc. 21 at 11) (quoting https://www.google.com/search?q=Dictionary#dobs=resolve&spf=1540304151168); (doc. 21 at 11 , n. 4) (citing https://en.oxforddictionaries.com/definition/resolve). She later says that "the terms 'settle' and 'resolve' are nearly identical in meaning," and "'[r]esolve' and 'settle' mean the same thing." (Doc. 21 at 10, 12). The Court disagrees.[8]

_____

    [8] The Plaintiff correctly notes that "the appellate court cases Ms. Swann cites in her Complaint clearly hold that the use of deceptive or misleading collection letters to collect time-barred debts violates the FDCPA." (Doc. 21 at 8) (*citing Tatis*, 882 F.3d 422; *Pantoja v. Portfolio Recovery Assocs., LLC*, 852 F.3d 679, 685 (7th Cir. 2017), *cert. denied*, 138 S. Ct. 736, 199 L. Ed. 2d 604 (2018) ("[W]e believe the FDCPA prohibits a debt collector from luring debtors away from the shelter of the statute of limitations without providing an unambiguous warning that an unsophisticated consumer would understand."); *McMahon*, 744 F.3d 1010; *Daugherty v. Convergent Outsourcing, Inc.*, 836 F.3d 507, 513 (5th Cir. 2016) ("[A] collection letter seeking payment on a time-barred debt (without disclosing its unenforceability) but offering a 'settlement' and inviting partial payment (without disclosing the possible pitfalls) could constitute a violation of the FDCPA."); *Buchanan*, 776 F.3d 393. However, the Defendants correctly argue that these cases are only persuasive authority and are <u>factually</u> distinguishable. As recently noted by Judge Axon of this district:

In *Buchanan*, Judge Sutton noted that "[f]ormal and informal dictionaries alike contain a definition of 'settle' that refers to <u>concluding a lawsuit</u>." *Buchanan*, 776 F.3d at 399 (emphasis added). None of the definitions cited by Swann reference litigation, much less concluding a lawsuit. Further, an examination of the other sources referenced by Judge Sutton in *Buchanin* produces the same result. *See,* W e b s t e r ' s    D i c t i o n a r y    O n l i n e , https://www.merriam-webster.com/dictionary/resolve?src=search-dict-hed ("to deal with successfully: clear up," "to find an answer to"); The American Heritage Dictionary, https://ahdictionary.com/word/search.html?q=resolve ("[t]o find a solution to; solve: *resolved the problem*;" "[t]o bring to a usually successful conclusion: *resolve a conflict*"); Wiktionary, https://en.wiktionary.org/wiki/resolve ("[t]o find a solution to (a problem);" "[t]o come to an agreement or make peace;

---

In each of those cases, a debt collector sent a collection letter to a debtor offering to "settle" a time-barred debt. *Tatis*, 882 F.3d at 425; *Pantoja*, 852 F.3d at 682; *Daugherty*, 836 F.3d at 511; *Buchanan*, 776 F.3d at 395, 399; *McMahon*, 744 F.3d at 1013–14. And in each of the cases, the Court of Appeals held that, depending on the circumstances of the case, the offer to "settle" a time-barred debt could cause an unsophisticated consumer to believe that the debt collector had the ability to sue to collect the debt, constituting a false or misleading statement about the legal status of the debt. *Tatis*, 882 F.3d at 430; *Pantoja*, 852 F.3d at 683, 687; *Daugherty*, 836 F.3d at 511; *Buchanan*, 776 F.3d at 395, 399; *McMahon*, 744 F.3d at 1020.

\* \* \*

But in this case, the collection letters say nothing about "settlement."

*Trichell v. Midland Credit Mgmt., Inc.*, No. 4:18-CV-00132-ACA, 2018 WL 4184570, at \*3–4 (N.D. Ala. Aug. 31, 2018) (Axon, J.), *appeal pending*.

patch up relationship, settle differences, bury the hatchet. *After two weeks of bickering, they finally resolved their differences.*").

Swann also refers to the Wikipedia entry for "Dispute Resolution," <u>words which were not used in the letter in question</u>. (See doc. 21 at 11) (citing [https://en.wikipedia.org/wiki/Dispute_resolution](https://en.wikipedia.org/wiki/Dispute_resolution)). That definition refers to and discusses litigation extensively. Of course, the letter in the instant case did not use "dispute resolution," it used "resolve." Accordingly, the Court does not find this argument persuasive.

Furthermore, the Court is persuaded by the Third Circuit's opinion in *Tatis*, referenced by this Court in *McCamey*, which held that "[b]ecause the words 'settlement' and 'settlement offer' could connote litigation, the least-sophisticated debtor could be misled into thinking [the debt collector] could legally enforce the debt." *Tatis*, 882 F.3d at 430. Importantly, in *Tatis*, the Third Circuit distinguished its previous decision in *Huerta* which "analyz[ed] a letter using the more general verb 'to resolve.'" *Id.* at 430 (distinguishing *Huertas*, 641 F.3d at 33).[9] In this case, it is not

---

[9] The court in *Huertas* wrote:

AMP's letter indicates that Huertas's account has been reassigned, requests that Huertas call "to resolve this issue," includes a privacy notice informing him that Galaxy would be accessing his private consumer information, and, as required by 15 U.S.C. § 1692g(a), indicates that, if Huertas does not dispute the debt within thirty days of receiving the letter, AMP will assume the debt is valid. At the bottom, the letter states, in bold, capital letters, "THIS IS AN ATTEMPT TO

plausible that the least sophisticated consumer would be deceived by the use of the word "resolve" in this context.

### (2) The "Satisfaction" Language Did Not Imply the Threat of Litigation

In her <u>brief</u>, Swann argues that "

> Like "settle" and "resolve," the term "satisfaction" can be misleading in the context of a time-barred debt. Again, if a consumer searched on Google to see what is meant by "satisfaction", an entry defines it as "the payment of a debt or fulfillment of an obligation or claim." Moreover, the offer to "close"[10] the account upon payment clearly implies that the debt is still "open", and not time-barred.

(Doc. 21 at 12-13) (quoting https://www.google.com/search?site=async/dictw&q=Dictionary#dobs=satisfaction). The definition cited by Swann does not reference litigation or concluding a lawsuit. A similar definition to the one cited by Swann can be found in the online version of the American Heritage Dictionary (https://ahdictionary.com/word/search.html?q=satisfaction ("[c]ompensation for injury or loss; reparation")), Wiktionary (https://en.wiktionary.org/wiki/satisfaction)

---

COLLECT A DEBT."

> Even the least sophisticated consumer would not understand AMP's letter to explicitly or implicitly threaten litigation.

*Huertas*, 641 F.3d at 33 (record citations omitted).

[10] The Plaintiff makes no attempt to provide a definition of "close" which supports her claim. She focuses only on the "satisfaction" language, as does this section of the Court's opinion. The Court still notes, and holds, however, that the least sophisticated consumer would not be deceived by the use of the word "close" in this context.

("reparation for an injury or loss"), and Dictionary.com (https://www.dictionary.com/browse/satisfaction) ("reparation or compensation, as for a wrong or injury"; "payment or discharge, as of a debt or obligation"). This contrasts sharply with Judge Sutton's analysis of the formal and informal definitions of "settlement," which reference lawsuits.

That having been said, Webster's Dictionary, in one entry, defines "satisfaction" as "the discharge of a _legal_ obligation or claim." (https://www.merriam-webster.com/dictionary/satisfaction) (emphasis added). Another definition, contained in the online version of The Oxford Dictionary is "to place on the record of a court a statement that the payment ordered by it has been duly made." (http://www.oed.com/view/Entry/171223?redirectedFrom=satisfaction#eid). Finally, Black's Law Dictionary Free Online Legal Dictionary 2nd Ed. defines "satisfaction" as follows:

> The act of satisfying a party by paying what is due to him (as on a mortgage, lieu, or contract,) or what is awarded to him, by the judgment of a court or otherwise. Thus, a judgment is satisfied by the payment of the amount due to the party who has recovered such judgment, or by his levying the amount.

(https://thelawdictionary.org/satisfaction/) (emphasis added). Still, none of these definitions refer to a means of concluding or avoiding a lawsuit. All of them refer only to payment on a legal debt, order, or judgment already entered, and only the

latter two mention a "court" at all.

The Court has found no case addressing the satisfaction language in this context, but notes that the word "satisfaction," like the word "resolve," is more general than the word "settlement," and does not carry with it the same litigation connotations. The Court holds that the least sophisticated consumer would not see the term "satisfied" or "satisfaction" in the letter as either an explicit or implicit threat of litigation.

> **d.** **Even if the Letter Contained Language Which Plausibly Could Lead the Least Sophisticated Consumer to Believe that She Would Be Sued If She Did Not Pay the Debt, the Disclaimer Language Made It Clear That She Could Not Be Sued**

Assuming that this language could mislead the least sophisticated consumer, the Court finds that the letter contained "language dispelling that potentially misleading terminology." *McCamey*, 2018 WL 3819828, at *8. The letter contained the following disclaimer:

> The law limits how long you can be sued on a debt. Because of the age of your debt, Jefferson Capital Systems, LLC will not sue you for it. If you do not pay the debt, Jefferson Capital Systems, LLC may report or continue to report it to the credit reporting agencies as unpaid. If you make a partial payment on this account it may restart the statute of limitations on this account.

(Doc. 1-2 at 1). Swann argues that this disclaimer language is ineffective to dispel the

least sophisticated consumer's notion that she might be sued because: 1) stating that JCS "will not" sue, rather than it "cannot" sue, improperly implied that JCS had the option to sue but was simply choosing not to; and 2) failing to state that DRS will not (or could not) sue left open the possibility, in the mind of the least sophisticated consumer, that DRS might sue them if the debt was not paid. The Court will address each contention in turn.

First, the Court notes that the "will not sue" language is the same language mandated by consent decrees which have been entered into by the Federal Trade Commission (the "FTC") and the Consumer Financial Protection Bureau ("CFPB"). *See*, *In re Encore Capital Grp., Inc.*, No. 2015-CFPB-0022, Consent Order, Doc. 1 at 38-39, available at: https://files.consumerfinance.gov/f/201509_cfpb_consent-order-encore-capital-group.pdf; *United States of America v. Asset Acceptance, LLC*, No. 8:12-cv-00182-JDW-EAJ, doc. 5 at 13 (M.D. Fla. Jan. 31, 2012) (Whittemire, J.). Referencing these decrees, it has been noted:

> An agency's informal interpretation of a statute, such as opinion letters, policy statements, agency manuals, and enforcement guidelines, are not entitled to deference. *Christensen v. Harris Cnty.*, 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000) (citations omitted). However, such interpretations are entitled to respect "to the extent that those interpretations have the power to persuade." *Id*. (internal quotations and citations omitted). The consent decrees do not explain why the CFPB

and the FTC chose the specific language that is mandated to be used by the decrees. However, the Court does find that the fact that the two agencies charged with enforcing the FDCPA mandated the language used by the Defendant serves to reinforce its finding that the language does not constitute a false representation or a deceptive means of collecting the debt.

*Valle v. First Nat'l Collection Bureau, Inc.*, 252 F. Supp. 3d 1332, 1341 (S.D. Fla. 2017) (Scola, J.). The Court agrees with this approach and also holds that this language is not deceptive.[11]

Additionally, the Court is also persuaded by a different approach (reaching the same result) taken by Judge Axon in *Trichell*, where she wrote

> In *Pantoja*, the debt collector sent the debtor a letter "offering to settle this account FOR GOOD!" 852 F.3d at 682. At the bottom of the letter, the debt collector included the second sentence from the disclaimer language: "Because of the age of your debt, we will not sue you for it and we will not report it to any credit reporting agency." *Id*. But the debt collector omitted any sentence indicating that the law limits how long a debtor can be sued on a debt. *Id*. at 686. Based on that omission, the Seventh Circuit concluded that "the letter deceptively said that [the debt collector] had chosen not to sue [the debtor], rather than saying that the debt was so old that [the debt collector] could not sue him for the alleged debt," *id*. at 683, because "[t]he reader is left to wonder whether [the debt collector] has chosen to go easy on this old debt out of the goodness of its heart, or perhaps because it might be difficult to prove the debt, or perhaps for some other reason," *id.* at 686.

> By contrast, in this case, the collection letters include a sentence stating that the law limits how long a debtor can be sued on a debt. This

---

[11] In *McCamey*, this Court made reference to the FTC decree in a footnote but did not opine as to its persuasiveness. *McCamey*, 2018 WL 3819828 at *9, n. 6.

sentence draws a connection between the legal unenforceability of the debt and the debt collector's promise not to sue. *Cf. Buchanan*, 776 F.3d at 400 (suggesting in dicta that including language stating that "[t]he law limits how long you can be sued on a debt. Because of the age of your debt, [the debt collector] will not sue you for it" would correct "any possible misimpression by unsophisticated consumers"). Accordingly, unlike in *Pantoja*, the collection letters here do not deceptively or misleadingly imply that the debts are legally enforceable.

*Trichell*, 2018 WL 4184570, at *4; *see also Stimpson v. Midland Credit Mgmt., Inc.*, No. 1:17-CV-00431-BLW, 2018 WL 4643110, at *9 (D. Idaho Sept. 27, 2018) (Winmill, C.J.) (citing *Trichell*, and holding that the least sophisticated consumer would not interpret the "will not sue" language "as a veiled message, telling him that the debt is not time barred, or that litigation may be forthcoming, if [the creditor] so chooses."); *Valle v. First Nat'l Collection Bureau, Inc.*, 252 F. Supp. 3d 1332, 1340 (S.D. Fla. 2017) (Scola, J.) ("Read in the context of the entire paragraph, the phrase 'will not sue you' is not false or deceptive, even from the perspective of the least sophisticated consumer."). The Court is persuaded by and adopts this reasoning for its holding that the statement that JCS "will not" sue is not deceptive or misleading.

A similar analysis must be done when examining the Plaintiff's allegation that the disclaimer should have also stated that DRS, in addition to JCS, will not sue her. Before doing so, the court notes again that "[t]he least sophisticated consumer can be presumed to possess a rudimentary amount of information about the world and a

willingness to read a collection notice with some care." *See McCamey,* 2018 WL 3819828, at *3 (internal quotations and citations omitted). She "isn't a dimwit," and is "capable of making basic logical deductions and inferences." *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 645 (7th Cir. 2009) (internal quotations and citations omitted).

With those basic rules in mind, the fact that the disclaimer only states that <u>JCS</u> will not sue must be read in conjunction with the letter's language regarding <u>who owns the debt</u>, and thus the <u>right</u> to sue. The letter states that DRS has "been asked to contact you <u>by our client</u>, Jefferson Capital Systems, LLC, regarding your past due account <u>with them</u>" because "<u>Our Client</u> has not received payment." (Doc. 1-2 at 1) (emphasis added). The disclaimer is clear that JCS, the owner of the account, will not sue because of the age of the debt, but that JCS "may report or continue to report [the debt] to the credit reporting agencies as unpaid." (Doc. 1-2 at 1). Nothing about this letter suggests that DRS owns the debt, or will (or has the right to) take any action in any way against Swann if the debt owed to JCS is not paid. When read as whole, the letter is clear, and common sense dictates, that the right to enforce and collect on the debt, if it exists at all, exists only with JCS. On top of that, basic logic dictates that since JCS cannot sue "because of the age of the debt," DRS cannot either. Any other reading would be a "bizarre or idiosyncratic interpretation[]" which the objective

component of the FDCPA protects against. *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1194 (11th Cir. 2010). Furthermore, Swann has not produced, and this Court has not found, a single case which holds that it is deceptive to fail to state that a non-owner of the debt also will not sue. The Court holds that the least sophisticated consumer would not read this language as implying that DRS could sue when JCS could not.

### 3. *Count One Is Due to Be Dismissed to the Extent It Is Based on the Allegation that the "Satisfaction" Language Falsely Implied a Benefit to Repayment*

In her Complaint, Swann references the letter's language stating that, upon receipt of payment, the account would be "satisfied and closed, and a satisfaction letter will be issued," and claims that this was a false claim "that payment would result in benefits." (Doc. 1 at 4, ¶11) ("Moreover, there is no benefit to the consumer to have the account marked as 'satisfied', nor any benefit in getting a 'satisfaction' letter."). Swann fails to make any substantial argument on this point in her brief, except the conclusory statement that "Ms. Swann's payment or 'satisfaction' of the debt would not benefit her in any way." (Doc. 21 at 5; *see also*, doc. 21 at 18 (stating that payment "would result in the alleged benefit of receiving a letter of 'satisfaction'.")).

First, it is clear that "conclusory allegations . . . are not entitled to an

assumption of truth-legal conclusions must be supported by factual allegations."

*Randall v. Scott*, 610 F.3d 701, 709–10 (11th Cir. 2010). Regardless, assuming that

the "satisfaction" language implied a benefit to Swann, it was not a false

representation because there is a benefit to paying. As noted by the Defendants (*see*

doc. 16 at 22-23), and this Court above, the Defendants may properly, and legally,

continue to be report Swann's debt to credit bureaus as unpaid, unless it is satisfied.

Accordingly, there is a benefit to the Plaintiff in "satisfying" the debt. Too, having

satisfied her debt, Swann might consider her "moral obligation" to repay also

satisfied. *See McMahon*, 744 F.3d at 1020 ("[S]ome people might consider full debt

re-payment a moral obligation, even though the legal remedy for the debt has been

extinguished."); *Trichell*, 2018 WL 4184570, at *4 ("[I]t is not deceptive or

misleading to list 'benefits' of paying the time-barred debt, because 'some people

might consider full debt re-payment a moral obligation, even though the legal remedy

for the debt has been extinguished.'") (*quoting McMahon*, 744 F.3d at 1020).

Assuming that the "satisfaction" language could be read to imply a benefit to

repayment, the letter did not violated the FDCPA.

### 4. *Count Two Is Due To Be Dismissed Because Count One Is Due To Be Dismissed*

The Eleventh Circuit has indicated that a plaintiff cannot succeed on a section

1692f claim if it is based on the same facts as a failed 1692e claim. *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1200 n. 31 (11th Cir. 2010) (find it "doubtful" that conduct not found to violate § 1692e(5) could be perceived as unfair and unconscionable); *see also, Miljkovic v. Shafritz & Dinkin, P.A.*, 791 F.3d 1291, 1308 (11th Cir. 2015) (citing and quoting *LeBlanc* and noting that "Appellant fails to specifically identify how Appellees' conduct here was either unfair or unconscionable *in addition* to being abusive, deceptive, or misleading.") (emphasis in original); *Trichell*, 2018 WL 4184570 at *5 ("The court agrees that where both claims are based on the same facts, the failure to state a claim under § 1692e means that the plaintiff has also failed to state a claim under § 1692f."). This Court also finds that where, as in this case, the Plaintiff's claims fail to state a claim under section 1692e, they also fail to state a claim under section 1692f when based on the same conduct. Count Two will be dismissed.

## V.    CONCLUSION

For the reasons stated herein, the Motion will be **GRANTED**, and this case will be **DISMISSED with prejudice**. A separate Final Order will be entered.

**DONE** this 28th day of November, 2018.

_____

**VIRGINIA EMERSON HOPKINS**
Senior United States District Judge